UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PHILLIP RANDALL TILLIE #636229,                Case No. 2:20-cv-00177

                 Plaintiff,                Hon. Hala Y. Jarbou
                                         U.S. District Judge

   v.

UNKNOWN GOLLADAY, et al.,

                 Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Phillip Randall Tillie pursuant to 42 U.S.C. § 1983. Tillie alleged in his unverified complaint that while he was confined in the Chippewa Correctional Facility, Corrections Officer (CO) Golladay touched him inappropriately during a shakedown on July 9, 2020. Tillie asked for a Prisoner Rape Elimination Act (PREA) grievance form and Golladay allegedly refused to provide the form. The next day, Tillie alleges that Golladay issued him a misconduct ticket in retaliation for his request for a PREA grievance form.

Tillie's claim alleged First and Eighth Amendment claims against Golladay and the Michigan Department of Corrections (MDOC). On October 14, 2020, the Court issued an opinion dismissing the MDOC and Tillie's Eighth Amendment claim

against CO Golladay.  (ECF No. 5.)  Tillie's remaining claim is a First Amendment retaliation claim against CO Golladay.  (*Id*.)

This report and recommendation (R&R) addresses CO Golladay's motion for summary judgment.  In this motion, Golladay asserts that Tillie failed to exhaust his administrative remedies.  (ECF Nos. 26 and 27.)  Golladay notes that, pursuant to MDOC policy, Tillie was required to exhaust his retaliation claim in his misconduct hearing, or, in the absence of a hearing, to file a grievance.  Golladay says that the records associated with these misconduct hearings indicate that Tillie did not raise a retaliation claim.  (ECF No. 27, PageID.106.)  And he says that MDOC records indicate that Tillie did not exhaust a grievance relating to his claims.  (*Id*., PageID.107.)

Tillie has filed a response.  (ECF No. 33.)  He argues that the grievance process was not available to him because he could not navigate the process.  (*Id*., PageID.209.) He also says that he was on "modified access" to the process and the Grievance Coordinator failed to provide a grievance form when requested.  (*Id*.)

Defendant Golladay filed a reply.  (ECF No. 39.)  He asserts that Tillie filed several requests for grievance forms during the relevant period, but those requests were denied because the Grievance Coordinator needed more information.  Golladay included all of Tillie's grievance form requests.  (ECF No. 39-1.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court deny Defendant Golladay's motion for summary judgment.  The undersigned notes that the Grievance Coordinator's

2

affidavit included three separate requests for grievance forms to allow Tillie to pursue a grievance against Golladay without a record reflecting an ultimate resolution of the request.  Based on this record, the undersigned concludes that a genuine issue of material fact remains with respect to Tillie's exhaustion of his administrative remedies.  The Court may wish to order a bench trial, pursuant to *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015), to resolve the matter.

This R&R also addresses Tillie's motion for a preliminary injunction or temporary restraining order.  (ECF Nos. 13.)  Golladay has filed a response to this motion.  (ECF No. 19.)

The undersigned also recommends that the Court deny Tillie's motion for injunctive relief and.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[1]   Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury.  *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A

prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits."  *Porter*, 534 U.S. at 524.   In the Court's view, this objective was achieved in three ways.  First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Id.* at 525.  Second, "the internal review might 'filter out some frivolous claims.'"  *Id.* (quoting *Booth*, 532 U.S. at 737*).*  And third, "adjudication could be facilitated by an administrative record that

clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after

the response was due.  MDOC Policy Directive 03.02.130 at ¶ DD.  The respondent at Step II is designated by the policy.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.  *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.  *Id.*  Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.  The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.  *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance

procedure. As the well known proverb states, they cannot have their cake and eat it too.").

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[2], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94.  If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94.  Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation.  MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those

---

[2]     Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe.  While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts."  MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

rules will not bar that prisoner's subsequent federal lawsuit.   *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."  *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## IV. Misconduct Tickets and results Identified by Defendant

Defendant identified nine class II misconduct tickets summarized below. Defendant issued only two of the following misconduct tickets.

| Issued by | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| **Defendant Officer Golladay** (ECF No. 27-4, PageID.141-142.) | Insolence during pat down search after Tillie stated: "I knew you were going to touch | 7-9-2020 | 7-14-2020 | Guilty finding | No appeal |

---

[3]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

| Issued by | Allegation(s) | Date of Misconduct Report | Date of Misconduct Hearing | Results of Misconduct Hearing | Results of Misconduct Appeal |
|---|---|---|---|---|---|
| | my pussy now you are going on the lawsuit with the others, no one touches my pussy for free bitch" | | | | |
| Officer Koben (ECF No. 27-4, PageID.131-132.) | Interference with the administration of rules #2 | 7-11-2020 | 7-14-2020 | Guilty plea | No appeal |
| **Defendant Officer Golladay** (ECF No. 27-4, PageID.134-135.) | Interference with the administration of rules #3 | 7-11-2020 | 7-14-2020 | Guilty plea | No appeal |
| Officer Benoit (ECF No. 27-4, PageID.137-138.) | Interference with the administration of rules #1 | 7-11-2020 | 7-14-2020 | Guilty plea | No appeal |
| Officer Koben (ECF No. 27-4, PageID.144-145.) | Interference with administration of rules | 7-26-2020 or 7-29-2020 | 8-4-2020 | Guilty plea | No appeal |
| Officer Matchinski (ECF No. 27-4, PageID.147-148.) | Unauthorized occupation of a cell or room | 7-26-2020 | 8-4-2020 | Guilty plea | No appeal |
| PC Pancheri (ECF No. 27-4, PageID.150-152.) | Interference with administration of rules | 8-4-2020 | 8-10-2020 | Misconduct dismissed because prisoner did not receive a copy of ticket | |
| Officer Koben (ECF No. 27-4, PageID.154-155.) | Disobeying a direct order | 8-6-2020 | 8-16-2020 | Tillie stated that the misconduct was written in retaliation for grievances. Found guilty | No appeal |
| Officer Rau (ECF No. 27-4, PageID.157-158.) | Destruction or misuse of property | 8-24-2020 | 8-27-2020 | Found guilty | No appeal |

### V. Analysis

Tillie argues that he did not need to exhaust his retaliation claim because administrative remedies were unavailable to him. (ECF No. 33, PageID.209.)  Tillie asserts that he was on modified access to the grievance procedures.  (*Id*., PageID.210.) While on modified access, Tillie could only obtain a grievance form by requesting it from the grievance coordinator.  (*Id*.)  Tillie says that the grievance coordinator ignored his requests for grievance forms.  (*Id*.)  Tillie asserted in his complaint that Defendant Golladay issued a retaliatory misconduct ticket against him.

To exhaust his administrative remedies with respect to allegedly retaliatory misconduct tickets, Tillie's first option was to raise the issue of retaliation during his misconduct hearing and then appeal his guilty finding.  *Siggers v. Campbell*, 652 F.3d 681, 693-94.  The filing of a grievance is not the proper procedure for raising and exhausting a retaliatory false misconduct ticket claim.  *Id*.  Restrictions placed on Tillie that required him to obtain grievance forms from the grievance coordinator, even if those restrictions prevented him from filing grievances on his retaliation claim, are not relevant to the issues Tillie presents in this case.  To exhaust his claim, Tillie needed to raise his retaliation claim during his misconduct ticket hearing and appeal his misconduct finding.  *Id*.  Therefore, a review of the misconduct tickets Tillie received, the misconduct hearing decisions, and appeals filed by Tillie will determine whether Tillie exhausted his administrative remedies in this case.

During July and August of 2020, Tillie received 9 misconduct tickets.  Only two of those tickets were issued by Defendant Golladay.  First, on July 9, 2020, Tillie received a misconduct ticket for insolence based upon statements he made during a pat down search.  Second, on July 11, 2020, Tillie received a misconduct ticket for interference with the administration of rules.

This analysis starts with the second of the two tickets.  The report associated with this misconduct ticket indicates that Tillie pled guilty and waived his right to a hearing.  A portion of the report is shown below.



(ECF No. 27-4, PageID.134.)

The records indicate that Tillie did not raise the issue of retaliation during his hearing, and did not appeal the guilty finding.  Tillie's response to the motion for summary judgment does not assert that he did argue retaliation during the hearing.

Tillie did contest the first of the two misconduct tickets written by Golladay. A review of the records before the Court indicates that he did not raise the retaliation issue during his misconduct hearing and did not appeal the decision of the hearing officer.

A portion of the hearing report associated with this ticket is shown below.

| CLASS II AND III MISCONDUCT HEARING REPORT | | | | CSJ-229 10/10 |
|---|---|---|---|---|
| **GENERAL INFORMATION** | | | | |
| Prisoner Number 636229 | Prisoner Name Tillie | | Facility Code URF | Violation Date 07/09/2020 |
| **MISCONDUCT VIOLATION** | | | | |
| Hearing Class II ☒ Class III ☐ | Misconduct Charges Insolence | | | |
| Misconduct Charge if Changed by Hearing Officer | | Plea ☐ Guilty | | ☒ Not Guilty |
| **WAIVER OF HEARING** | | | | |
| I understand I have a right to a hearing.  I waive my right to a hearing and plead guilty to all charges.  I also waive my right to appeal and accept the sanctions imposed. | | Prisoner's Signature | Date 07/14/2020 | |
| **HEARING REPORT (Do Not Complete If Hearing Waived)** | | | | |
| Evidence and/or prisoner statement in addition to misconduct report: Prisoner pleads not guilty,  Claims he didn't say anything to him. | | | | |

(ECF No. 27-4, PageID.141.)  The report indicates that Tillie pled not guilty and claimed he did not make the statements attributed to him.  The report does not indicate that Tillie argued retaliation.  And, importantly, Tillie does not claim that he argued retaliation during the hearing.[4]

---

[4]    Tillie alleges in his complaint that he appealed a misconduct report but that his appeal was denied.  (ECF No. 1, PageID.3.)  Tillie is not clear as to which misconduct report he appealed.  The record does not include a misconduct appeal.

14

Thus, as a starting point, the undersigned concludes that Tillie did not raise the retaliation issue during the hearing or hearings associated with the tickets written by Golladay.

Second, the records provided by Defendant Golladay indicate that Tillie did not exhaust a grievance related to his retaliation claim against Golladay during the relevant time.  (*See* ECF No. 27-3, PageID.122-24 (Tillie's MDOC Prisoner Step III Grievance Report), PageID.128 (Tillie's Step I grievance filed July 3, 2020).)  Tillie did not allege retaliation by Golladay in any grievance he pursued through Step III.

Thus, the records associated with the misconduct hearings and grievance Tillie actually filed indicate that he did not exhaust his administrative remedies.

But Tillie argues that the grievance process was not available to him because he could not navigate the process.  (ECF No. 33, PageID.209.)  He also says that he was on "modified access" to the process and the Grievance Coordinator failed to provide a grievance form when requested.  (*Id*.)  The records before the Court indicate that a genuine issue of material fact remains as to the latter claim.

A prisoner on modified access to the grievance process still has access to the process.  According to URF Grievance Coordinator McLean, Tillie was on modified access from April 23, 2020 to August 21, 2020 – a period that included the allegations in this case.  (ECF No. 39-1, PageID.272.)

Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances (three within a 30 calendar day span) that are rejected . . . ."  Mich. Dep't of Corr., Policy Directive

03.02.130, ¶ JJ.  (effective, March 18, 2019).  The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy.  *Id.*, ¶ MM.

The Sixth Circuit has held that modified access to the grievance process does not deny a Michigan prisoner the right or ability to seek redress for meritorious grievances.  Rather, it merely requires the prisoner to obtain permission from the grievance coordinator to file a grievance.  *Walker v. Mich. Dept. of Corrections*, 128 Fed. Appx. 441, 444 (6th Cir. 2005); *Hartsfield v. Mayer*, 76 F.3d 378, 1996 WL 43541, **3 (6th Cir. 1996).

McLean attested that he logged and processed each of Tillie's requests for a Step I grievance form during the relevant period.  (ECF No. 39-1, PageID.272.) McLean also attached to his affidavit records associated with Tillie's requests for grievance forms during the relevant period.

McLean's records include a "kite" (a request to a prison official) from Tillie dated July 9.  It is shown below.

Phillip Tillie 636229 M-411 (7-9-20)

I need Grievance forms for
Following Incidents...

1.) Denial of Prea Grievance

2.) Violation of P.D. 03.03.130

3.) % falsified A N.O.I

These are 3 Separate Grievance request.
Also I'm asking for Grievances, And because
you continue to respond late. I'm missing my
right to file timely PD 03.02.130 ÷ OP
03.02.130.

Distribution : Offender

C.C.

(*Id*., PageID.292.)

Tillie then repeated his request the next day.  His second request is shown below.

As concise as possible, either send rejections or Grievances.

**7-10-20**

I need Grievance forms and Step 2 Appeal forms

Reason 1) I need Step 2 Appeal forms for following Identifiers.
URF-2007-1822-28E and URF-2006-1773-11A

Reason 2) C/O Stevenson falsified Document on 7-9-20. It's a
violation of employee rule 47... I tried to resolve issue
by informing ~~officer~~ Stevenson about prior incident.
The time would be 8:00-9:00 AM on Above date

Reason 3) On 7-9-20 C/O Golladay asked me for a shake down
during shake down C/O violated P.D. 03.03.130,
P.D. 03.03.140. I was degraded and Humiliated by C/O
Golladay

(*Id.*, PageID.295.)

McLean responded to the two requests separately.  On July 15, he provided the

following response to the first request:

18

**MICHIGAN DEPARTMENT OF CORRECTIONS**

"Committed to Protect, Dedicated to Success"

**MEMORANDUM**

**DATE:** 7/15/20

**TO:** **636229 Tillie (M-411)**

**FROM:** M. McLean, URF Grievance Coordinator

**SUBJECT:** Kite Dated 7/9/20

Additional information is needed from you before I provide a Step I grievance forms. Please provide a clear concise statement of the incident you wish to grieve (i.e. who, what, when, where, why, how). Dates, times, places, and names (staff and prisoners) of those involved. Describe words or actions used by staff. This information is essential when determining if the issue you wish to grieve is grievable and otherwise meets the criteria outlined in policy.

(*Id.*, PageID.293.)

That same day, he provided a separate response to Tillie's second request.

# MICHIGAN DEPARTMENT OF CORRECTIONS

*"Committed to Protect, Dedicated to Success"*

## MEMORANDUM

**DATE:** 7/15/20

**TO:** 636229 Tillie (M-411)

**FROM:** M. McLean, URF Grievance Coordinator

**SUBJECT:** Kite Dated 7/10/20

1. Requested Step II appeal forms enclosed.
2. The NOI written by Officer Stevenson and heard by PC Pancheri can be appealed using the enclosed Step I grievance Form.
3. Additional information is needed from you before I provide a Step I grievance forms. Please provide a clear concise statement of the incident you wish to grieve (i.e. who, what, when, where, why, how). Dates, times, places, and names (staff and prisoners) of those involved. Describe words or actions used by staff. This information is essential when determining if the issue you wish to grieve is grievable and otherwise meets the criteria outlined in policy.
4. See #2
5. I have enclosed a Step I grievance form for you to pursue this issue.

(*Id.*, PageID.296.)

McLean was asking for more information from Tillie before agreeing to give Tillie a grievance form. The record does not indicate whether Tillie provided the additional information.[5] But, on August 4, 2020, he repeated his request for a grievance form for a grievance against Golladay. That request is shown below.

---

[5] Tillie provided a copy of a kite dated July 10, 2020, in which he asked for a grievance form. (ECF No. 33-3, PageID.236.) Tillie does not provide an affidavit explaining the origins or authenticity of this document. Thus, the undersigned has not considered it.

8- 4 -20

To : Grievance Coordinator                    From: Phillip Tillie 636229
Michael Mclean                               Lock: Marquette 411
Chippewa Correctional facility
Kincheloe, MI 49784

   I continue to ask for grievance's, due to me being placed on
Modified Access. It has been over 2 weeks since the incidents
occurred, and Since I requested grievances concerning , Golladay,
Stevenson, and Pincheri. I have given you more than enough
information. I requested Seperate grievances for Pinchei & Stevenson,
because there two totally different Issues (It violates policy)
03.02.130 / Unrelated Issues... M. Mclean you continue to deny
me my 1st Amendment right to petition the court for redress. I
need grievance's concerning the 3 Issues I previously Kited
about. Again I have given you more then enough Information.

Respectfully Submitted
Phillip Tillie 636229

(*Id.*, PageID.300.)

Based on the multiple requests for a grievance relating to Tillie's claims
against Golladay, the undersigned concludes that a genuine issue of fact remains in
the case.  Accordingly, the undersigned recommends denial of Golladay's motion for
summary judgment.

**VI**. **Injunctive relief**

Tillie requests an injunction or restraining order pending the outcome of the
case. (ECF No. 13.)  Tillie asserts that Security Classification Committee member
ARUM Spiker requested that he drop this lawsuit if he wanted to return to level II
housing from level IV housing.  Also, Captain Burke requested him to drop the

21

lawsuit or he would give Tillie the maximum amount of loss of privileges after he receives a ticket.  Tillie requests that the Court issue an order preventing ARUM Spiker or Captain Burke from having any contact with him during the pendency of this lawsuit.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ne. Ohio Coal.*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that

the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

Tillie's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his Section 1983 action. *NAACP v. City of Mansfield, Ohio*, 866 F.2d 162, 167 (6th Cir. 1989). Tillie has not attempted to make this showing. The allegations in Tillie's complaint fail to establish a likelihood of success on the merits of his retaliation claims against Defendant Golladay.

In addition, a party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint. *Colvin v. Caruso,* 605 F.3d 282, 299-300 (6th Cir. 2010). A motion for preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable. Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint. *Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010).

A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *Overstreet*, 305 F.3d at 578. Plaintiff has failed to assert factors that establish that he will suffer irreparable harm in the absence of an injunction.

Finally, in the context of a motion impacting on matters of prison administration, the interests of identifiable third parties and the public at large

weigh against the granting of an injunction.  Any interference by the federal courts in the administration of state prison matters is necessarily disruptive.  The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights.  *Glover v. Johnson*, 855 F.2d 277, 286-87 (6th Cir. 1988).  That showing has not been made here.

## VII.  Recommendation

The undersigned respectfully recommends that this Court deny Defendant Golladay's motion for summary judgment (ECF No. 26) because a genuine issue of material fact remains regarding whether administrative remedies were available to Tille.  The Court may wish to order a bench trial to resolve this issue.  Tillie never raised the issue of retaliation during his misconduct hearing on the two misconduct tickets issued by Defendant Golladay and he never established that he appealed his misconduct convictions.

In addition, it is recommended that the Court deny Tillie's request for injunctive relief.  (ECF No. 13.)


Dated:  May 19, 2021                    /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right

of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).